Good morning, Your Honor. My name is Matthew Campbell. I represent the appellant, Isaac Sprauer, from the Eastern District of Washington in Idaho. The issue we'd like to focus on, at least initially, is the issue of the offense level computed by the district court in this case. The base offense level under 2K2.1 would be generally 14. However, in this case, the court found it to be a 24 based on two prior crimes of violence. Specifically, we are challenging the third degree assault prior conviction, not the harassment conviction. Applying a three-point reduction for early acceptance, the district court found a 77-month sentence, which was the low end appropriate at a level 21. We believe it should have been at a level 17, which would have led to a range of 51 to 63 months. Generally speaking, to determine whether a prior conviction constitutes a crime of violence, the courts use a categorical approach under Taylor. That requires that the elements of the statute of conviction be compared with the crime of violence definition so that the court can assess whether the full range of conduct falls within the definition. There is Ninth Circuit precedent, U.S. v. Sandoval, which says categorically third degree assault is not a crime of violence. The appellee has conceded as much. Specifically under 4B1.2, a crime of violence can either have an element, the attempted use or threatened use of physical force, or be one of several enumerated crimes, and then there is the otherwise clause, or otherwise involves conduct that presents a serious potential risk of physical injury. The specific provision that Mr. Sprower was convicted of, third degree assault, subparagraph F, states that a person commits third degree assault if with criminal negligence, and we believe that's the key here, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering. Using the first crime of violence definition, the element, the use of force, the government does bear the burden of proving that that occurred under U.S. v. Ameline, but the word use connotes more than a strict liability offense. Instead, it evidences an intentional employment of force under Bailey v. U.S. The word use must be given its ordinary and natural meaning, which is to convert to one's service, to employ, to avail oneself of, or to carry out a purpose or action by means of, again under Bailey. Here, the record does not establish that force was actually used under that. I sense from the lack of questions to this part of your argument that we're all just waiting to hear you talk about Navarro. Fair enough. Under Navarro and under Jennings, which followed Navarro, this Court held that when the crime of conviction is missing an element of the generic crime altogether, it can never find that a jury was actually required to find all the elements of the generic crime. Here, the specific elements of the generic crime involve either both the use, which again requires intentional use, or it would require the otherwise prong under Begay. We believe neither one of those is found here, since under Begay the otherwise prong requires purposeful, aggressive, and violent conduct. The conduct was clearly not purposeful to the extent that it was negligent. It also, we'd argue, was not necessarily aggressive in that it was negligent as opposed to intentional. Regardless of what facts are admitted to or proven at the time of the predicate conviction, the conviction only qualifies if the proven facts were necessary to the conviction, given the elements of the offense. And in looking at the district courts... What you're saying is we just plain can't use the modified categorical approach because Washington third-degree assault does not include a necessary element and it doesn't work under the categorical approach because of Sandoval. Correct. That's precisely it. And if you look at the excerpts of record, and I believe it's pages approximately 150 to 156, there is some interchange. And the court essentially says that it appears that force was used based on the facts of the case in the police reports. But that avoids the analysis, essentially, of Navarro, Lopez, Jennings, and other cases, which simply state that you don't get to the modified categorical approach unless the elements required a determination. The elements just simply didn't require it because of the criminal negligence standard. And let's see, what are the elements, again, that have to be there and aren't? Specifically, it would either be the use, attempted use, or threatened use of force. And as I mentioned, the word use has specific connotations that don't include negligence. Intentional use. Intentional use, correct. Or it would be the otherwise prong, which under Begay requires purposeful, violent, and aggressive conduct. And it's an and, not an or. So there isn't purposeful conduct if someone is simply negligent. And I believe that one other relevant precedent. Save some time for rebuttal because I know we're going to be questioning and getting responses from your adversary on this. I will, Your Honor. I believe the other relevant case that I would cite regarding these issues that I believe shows, in essence, that the district court was incorrect, is the Perez v. Mukasey case, where, again, that was a fourth-degree assault under Washington law. But, again, the court made it clear in Perez that the issue, again, was the elements. And in that case, they couldn't find, although there was a record, they couldn't find any that the elements themselves had actually been proven. Unless there are further questions at this point, I briefly want to touch on several other issues, specifically relating to the arguments about the determination of appellant's criminal history. We did brief it. I'm not going to belabor that point. We believe that Crawford v. Washington did change the standard regarding admissibility of hearsay sentencing. There is case law that might hold differently, specifically Agostino v. Felton, and this Court's opinion in Littleson. However, I simply want to state that we believe that even if hearsay in general was admissible, there still must be some minimal indicia of reliability. None was presented here regarding the letter from DOC. Why isn't the letter itself self-not authenticating, but self-reliable? I mean, you don't often get letters from the Department of Corrections that are out of the blue. Certainly, there's a certain validity to that, but I believe that if you look at cases such as, I'm thinking of the recent Melendez-Diaz case, where they deal with hearsay issues, and I understand that was in a trial context, not a sentencing context, but it seems that the courts have gone away from simply a reliability analysis for evidence, and that the state of the law is that there should be some, I believe the indicia of reliability should be considered in terms of some sort of corroboration, something other than just an error. If the Confrontation Clause doesn't apply at sentencing, I mean, the Crawford line of cases doesn't apply at sentencing. For sure, under Crawford, all the Roberts indicia of reliability, that's all gone with regard to trial. But our case law at least suggests that at sentencing, we haven't moved to this new regime where you have no hearsay permitted, Confrontation Clause applies. That's the case. I'm not sure why. I mean, you already indicated an indicia of reliability is expected. You got a letter from the Department of Corrections. What's unreliable about that? You know, to suggest that we need some other kind of corroboration, why? Well, not to belabor the point, but I think that the issue then becomes that, in essence, certain hearsay would just simply become self-authenticating, which, Your Honor, you- Well, it's like we get the probation report or the pre-sentence report. All the time it's filled with stuff. Unless parties object, unless something's called into question, it's sort of the base point. It's the given. I'm not sure why under the circumstances like this, unless defendant comes up and says that's wrong and puts at issue the question and offers some up at least an explanation as to why it's wrong, why it isn't something that the court should be allowed to rely upon. Well, what I would point out on this particular issue is that this letter was submitted to defense counsel at the last moment. Counsel never really had a chance to address whether it was accurate or whether it wasn't accurate. Was there any objection? There was an objection. There was specifically a Crawford objection. Crawford objection. And they noted on the record that it had just been received, that they had not had an opportunity to contact the author of the letter or do any investigation. What I saw when I looked at this was Crawford and hearsay objection. And I thought, well, that's without merit because Crawford doesn't apply and the hearsay rule doesn't apply in sentencing. So end of problem. You don't need authentication, you don't need to get around the hearsay rule, and there's no right of confrontation. My recollection of the testimony, and I can check while counsel is speaking, is that there were discussions of the fact that it had just been delivered, that there had been no opportunity. The probation officer said that she sent it in October, and that's what the document suggests. It sounds like it hadn't been received. The point was the defense lawyer said, I didn't know about this before. That is clearly on the record. But the probation officer said, and the copy of the letter suggests it was sent to the judge, copied to both counsel. I suspect the judge received his and figured if it got lost in the defense counsel's office, that's not his problem. There's no further discussion. So I'll accept as a given the defense counsel may not have known it. I don't think you can infer a finding that it wasn't turned over until the very end. Understood. And to that extent I would concede that issue, that I'm not accusing anyone of bad faith or anything along those lines. And then finally, and I'd like to reserve the remainder of my time, I would simply note that the arguments regarding competency, we understand that's a clear error standard. We've done our best to outline the various differences there. And regarding the unreasonable sentence, I believe most of that would dovetail with the competency issues. And I'd like to reserve my time. Thank you, counsel. Counsel. Good afternoon, Your Honors. Ani Ahmed for the United States. And the first issue I want to address is the mental competency of Mr. Sprower. Could you help me get something else off my mind first? Yes, Your Honor. Your heart issue. Yes, Your Honor. Navarro Lopez. I don't see how you can get around Navarro Lopez. It looks to me as though it's kind of syllogistic. Your modified categorical approach cannot be used because of Navarro Lopez, and it doesn't fit under the categorical approach. So it's not a crime of violence, and it doesn't matter what he did. I don't know if that's good law. I don't know if our rule in Navarro Lopez is good law, but no question that it is the law of the circuit. Your Honor, there's one thing that I would ask the court to consider when addressing that one issue is there is an RCW, which I've noted in my brief on page 22. RCW? The Washington State law, Your Honor. The Washington State code? Got it right here. Yes, page 22 of my brief, Your Honor. Well, I wasn't looking at your brief. I was actually looking at the statute. Okay. Is that what you want me to look at? RCW 9A.08.010, and it talks about when the statute provides that one can be convicted under criminal negligence, that's also meant if the person acts intentionally, knowingly, or recklessly. And in this case, if you say that he otherwise, let's just look at the residual clause, if he otherwise engaged in activity that presents serious potential risk or physical injury of another, in this case, I think I'm missing something. I don't understand how that statute helps you at all. It doesn't say you need more than negligence. It says it covers more. There's certainly the possibility that an offense as defined in the Washington statute could be a crime of violence, but our question is the opposite. Is it possible that it could not be a crime of violence? Negligence by itself doesn't qualify, and the statute you just pointed me to doesn't say that you can't convict based on negligence. It says you can convict on something else, but that doesn't solve the problem that you can convict on negligence. Your Honor is right that you could be convicted of third-degree assault by simple negligence. Then why doesn't that say it doesn't qualify categorically, as we've already said, and because an element of the offense doesn't preclude that? It's not like you have a statute with subsections. This subsection qualifies, this one doesn't, and it's an issue of figuring out which subsection you qualify for. There doesn't seem to be anything that requires the trier of fact to determine whether enough for violence was there or not, if negligence is sufficient. Correct, Your Honor, but I would submit that that's why you go to the modified approach at that point. But Navarro says that if, in this case, the intentional use of violence, roughly, is not an element of the crime so that the crime could have been committed without that, then you never get to it. Well, my understanding of Navarro, Your Honor, and it may be incorrect, but my understanding is if it, in fact, doesn't meet the generic definition of the crime, then we could move on to a modified category. Let's look at it. You're right, but that really doesn't answer the question because what Navarro says, and I will confess it took a long time for a lot of the judges in our court to get their arms around that either. That's why Jennings becomes important because it's a little more pointed and the Navarro reference was more in passing. But it appears to say that if the statute itself doesn't create the key factor as an element so that you can say the trier of fact necessarily made that determination, then you're out of luck. Modified categorical becomes available only in a limited category of cases, and basically it's where you've got a statute, subsection A, subsection B. One would meet the categorical test. The other wouldn't. Then you're allowed to delve into the documents to figure out which subsection the conviction might have been under. But what you're apparently not allowed to do, and I will confess I dissented in Navarro-Lopez, what we're not allowed to do under our case law is to go back and, in effect, figure out whether the facts of this particular case happen to qualify. Navarro-Lopez and Jennings appear to say that's not what modified categorical permits you to do. Understood, Your Honor. If that's the court's understanding, then I'll move on to the next topic. It says when the crime of conviction is missing an element of the generic crime altogether, we can never find that a jury was actually required to find all the elements of the generic crime. And if I understand it right, Sandoval says that the statute is missing an element, and that's all she wrote. Understood, Your Honor. Am I misunderstanding something there? No, Your Honor. Your Honor, my argument was, and I understand what the court is saying, and I'm not disagreeing with the court incident of our decision, but what I was saying was that because he could have been convicted under the RCW of committing an act under this statute beyond negligence, for example, what they've indicated. I couldn't see where that helped you either. To me, it just sounded like you can convict somebody of a lesser included of negligence, of third degree assault, even if he's thoroughly guilty of first or second degree assault. My reading of it, Your Honor, was that he could be convicted of the negligence, third degree assault, even if he acted intentionally and knowingly. That's what I just said. And you're right about that. The problem is the categorical approach is the mirror image. We need to know that he can't be convicted on something lesser, and he plainly can because negligence is enough. Understood, Your Honor. Your Honor, I do want to touch on the mental competency aspect of it. I believe there was sufficient evidence for it. So are you saying that are you conceding that the element of the generic crime is altogether missing from the Washington statute rather than that the Washington statute is categorically broader than the generic definition? Your Honor, I will concede that the Washington statute under which he was convicted does just require negligence. It does not require in the statute itself an intentional act. As to the competency of the defendant, Your Honor, I believe there was sufficient evidence for the district court to correctly find that, in fact, the defendant was competent to meaningfully assist his defense lawyer in preparing his defense. I think in support of this, the district court talked about the fact that the defendant had diligently went over the PSR, pre-sentence investigation report, with his lawyer. He indicated a desire to replace one lawyer when he did not believe he was having meaningful dialogue with her, and that was done. He also appeared in court, as a district court observed, to understand the nature of the proceedings against him. And I think both the experts, and I understand that two experts did disagree, there was a previous assessment of the defendant in 2004 where... If I'm recalling correctly, there were two experts. One thought he was competent, one didn't. That's correct, Your Honor. Dr. Tehrani, who was appointed by the court to examine the defendant, indicated he was competent on both prongs of the Doosky test, and the defendant's, Dr. Jurgensen's expert, indicated that while he was competent as far as understanding the nature of the proceedings against him, he was not competent, and he suffered from bipolar disorder and delusions, and therefore could not meaningfully assist his attorney. However, I think the district court correctly found that, in fact, he could, based on what he had observed in court, based on what he, meaning the defendant, had spoken to about his attorney regarding the PSIR, and actually talking about the sentencing range itself, there was an ex parte hearing, Your Honor. There was paperwork produced that the United States never got a copy of, which was apparently sent from the defendant to his previous attorney. So I could not speak to that, but I could certainly say that there was paperwork, and the judge reviewed that paperwork, and after that believed that they could continue in a relationship with each other. I understood the main thrust, or a main thrust, of the defendant's argument is to acknowledge Dr. Turani's testimony that said it was not supported by the record. What is it about the testimony you think is supported by the record? Why should we take her conclusion as being supported by the record? Your Honor, I think that what she observed from the defendant, where he indicated to her that he was having self-report issues, where he was indicating to her that he was having hallucinations, that he was speaking with dead rap artists, she said that it just never manifested to her when she observed him during the three hours or so where she interviewed him, and then the court really didn't see. I mean, there was unusual statements made by the defendant to the court, which is cited in the defendant's brief, but the court never saw that the defendant could not meaningfully engage in any conversations with his trial lawyer to prepare a proper defense. I think that's what corroborates Dr. Turani's report. I don't think there was any doubt that the defendant was having moments where he may have had hallucinations or he may have had periodic indications of delusions. I think Dr. Turani acknowledged that as well, but she did not believe it sufficiently rose to a level where he could not cooperate with his lawyer. And I think when Your Honor asked me how was that corroborated, I will simply state that it was corroborated by the court's own observations and the multiple hearings that the court had with the defendant, and the court's own parlay with the defendant as well and in the conversations with the defendant. Your Honor, as far as the Crawford issue is concerned, I would submit that that notification from the Department of Corrections, according to the probation officer, was provided to defense counsel back a year, over a year, prior to the defendant's sentencing. I think it was in October that it was provided, and the following December is when we had the competency hearing. At the time of sentencing, the probation officer, I think the transcript reflects this, was adamant that she had provided a copy to defense counsel. At that point, there was no mention of, hey, I need a continuance to call this individual. I mean, his PSIR had indicated his past criminal history. It indicated that he was on supervised release. And the letter provided by, let's just say, assume that defense counsel, and I'm not disputing he didn't get it. It could have gotten lost in the shuffle. But he could have asked for a continuance at that time to contact Department of Corrections. The phone number is written right on top. And so there's sufficient indications of reliability. The United States would submit that Crawford doesn't apply anyway, but even if it did, there are sufficient indications of reliability. Let me just ask you, and this goes after the fact. You may cover things not in the record. I can't reproduce the details, but I recall seeing things that would have caused the defendant or defense lawyer to pause and say, gee, that's been too long ago. How can I still be on probation? Was there any review subsequent to determine, because it's a purely factual question, whether or not, in fact, he was still on probation or supervised release? Not to my knowledge, Your Honor. I believe it's just simply probation requested, and in the record it states that they requested to determine whether he was on supervised release, and then the letter they received in response. I can tell you the United States did not do that, and I didn't see anything that would concern me indicating that he was not on supervised release based on Department of Corrections' report. Your Honor, I would also talk about, I would submit that the court correctly enhanced by three levels based not only on the fact that he was on supervised release, but it had been less than two years since he'd been discharged from the last imprisonment sentence. And I think the record in the PSIR accurately reflects that it had been, in fact, less than two years. Finally, Your Honor, the United States would submit that the district court imposed a reasonable sentence. I believe Judge Nielsen in this case sufficiently went over the 3553A factors and talked about any drug treatment. Let me ask you something about the 3553. Yes, Your Honor. The way this looks to me right now, if I've got the right third degree assault, that's where he beat somebody with a baseball bat. And we are in the odd position under Navarro-Lopez and the wording in the Washington statute and Sandoval of saying, oh, nothing violent about that. Beat somebody in the face with a baseball bat, that's all right. Just negligence. It seems kind of ridiculous. So my guess is that when it goes back, the judge is going to do exactly the same thing and just use 3553 to do it. Instead of the guideline calculation. If the judge said that that's what he was going to do, then it makes it kind of a waste of time to send it back. If he didn't say that that's what he was going to do, then he goes first. Did he say? Not that I know of, Your Honor. He did not say. Are you asking, Your Honor, about the 3553? When a judge sentences, sometimes he says, well, I know there's this issue about this, but I would do the same thing anyway even if the guideline's calculation was different under 3553. He did not, Your Honor. In my review of the transcripts, I never saw that. He did the guideline calculation and the sentence was within the calculated range, the low end, right? Very low end, Your Honor. So you're not arguing there's something here from which we can infer it wouldn't have mattered? Your Honor, I don't believe it would have mattered. I share Judge Feinfeld's anticipation that if it goes back with a statement by us that says the guideline range has to be recalculated because of the Navarro-Lopez problem and so forth, I'm not going to keel over with shock if, in fact, the sentence turns out to be exactly the same thing. But this isn't a case, in your understanding, like we had a case earlier this week that you wouldn't know about where the judge said in so many words, but even if the guideline calculation was the way the defendant thinks, it wouldn't matter because I think this is the right sentence, in which case we just kind of could disregard the guideline issue. You're not telling us that you think this is a case like that even though you don't think it really made a difference. That's correct, Your Honor. That's correct. And I would submit that it just never came up in conversation with Judge Nielsen. I don't think that that was what he was thinking at the time. But he did talk about the educational opportunities and he addressed each specific objection that the defendant had to the PSIR and he talked about the protection of the public and the need for punishment. And I think his statement to Mr. Sprower at the end was, I think this is a harsh sentence but I don't think it's too severe. And so I would submit that he did impose a reasonable sentence. If there are no other additional questions by the Court, I think I'm over my time. Thank you, counsel. Thank you, Your Honor. If there are no more questions regarding Navarro-Lopez, I just want to briefly touch on competency. Again, while we recognize that it's a- I don't see where you get the first base. You've got two experts, one says one thing, one says the other. Based on his observations of the defendant and other evidence, the judge chooses the expert who says the one thing instead of the expert who says the other. It seems like a quintessential district judge call that we really can't do anything about. Well, it is generally competency issues are reviewed for clear error. That certainly is a higher standard, obviously, than de novo review. However, we do think that this cries out for some review. I would disagree with the idea that, in essence, there were only two experts. I think if you look at the record, although he didn't testify, there was a Dr. Goodwin who had treated Mr. Sprower back in 2004. Why is it clear error to go with Dr. Tirani, or however you pronounce her name? I believe that her testimony simply lacked, to use Judge Clifton's term, although he didn't say this, that it lacked support in the record, essentially. Dr. Tirani, to my way of thinking about it, didn't do her homework. She relied largely on Mr. Sprower's self-reporting. One of her major diagnoses was that any psychotic symptoms could have been caused by continued drug use. However, he'd been in custody for, if memory serves me, at least nine months. Dr. Jorgensen discussed that, saying that, while I suppose it's possible that somebody could be getting a steady dose of meth in federal custody, it was unlikely. So her diagnosis that all of these symptoms, which she did not, she said she didn't observe them, but she didn't say they didn't occur, to say that they were a result of drug use simply lacks... There was something in the nature of, I didn't see it, as I looked at what she said. Yes. Which made me wonder, because the judge, in essence, said, I didn't see it either. Some conditions manifest themselves sometimes and don't at other times. How does that speak to competency? In fact, somebody may be perfectly lucid and competent at some times, not at others. If there's enough time for the lawyer to work with them when he's lucid, is that enough to make him incompetent? Well, I think in this case it's a complicated answer. I'll try to do it as briefly as possible. First of all, I think it's worth noting that both of the experts said that Mr. Sprower could appreciate what the judicial proceedings were. So he wasn't... Strictly on the next part. Right. Ability to help counsel. Exactly. So some of his symptoms or his manifestations wouldn't necessarily be visible to somebody if he was sitting in this courtroom. He had this delusion that he had been set up by the ATF, that he owned Egypt, Lebanon, and Israel, that they had been taken from him. However, if you didn't ask him that, he's not necessarily going to be ranting and raving about it. Secondly, I would take issue with the idea that Dr. Tarani didn't see the symptoms. To our way of looking at it, she simply chose to avoid them. For example, he told her that he had a six-year-old child. He has no child. That was shown relatively clearly. But his claim was that the ATF agent's name was Charles Rushing, that he set Mr. Sprower up. Mr. Sprower had a child with Mr. Rushing's wife, who was a local cop. It turned out none of that was true. However, Dr. Tarani didn't follow up on that. So I think part of our argument is that it's essentially unclear to say that she didn't see the symptoms. If he's evidencing this behavior, which goes back to 2004, according to Dr. Goodwin, who had treated him previously, long before any criminal charges ever arose. That's why I say, in essence, I think it's more two doctors as opposed to one. Dr. Goodwin and Dr. Jorgensen were largely consistent with one another. Again, I understand that Dr. Tarani gave testimony. I think if this was an insufficiency of the evidence claim, it would be different. But I do believe that it's reviewable under clear error and that, as we've briefed, it shows that the court erred in taking her opinion over the other two doctors, who were far more consistent with the evidence. Thank you, counsel. Thank you. United States v. Sprower is submitted. And I think that's it. We're adjourned for the morning.
judges: Alarcon, Kleinfeld, Clifton